IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 23-cv-00518-SKC-MDB

JENNA LYNN GALLAS, formerly known as Jenna Lynn Hubbs,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

---

## ORDER

---

Before the Court is the Recommendation of Magistrate Judge Maritza Dominguez Braswell (Dkt. 33) to deny Defendant's Motion to Dismiss (Dkt. 13). Defendant has filed a Partial Objection to the Recommendation (Dkt. 36) and Plaintiff filed a Response to the Partial Objection[1] (Dkt. 38). For the reasons shared below, the

---

[1] Throughout Plaintiff's Response, counsel refers to Judge Dominguez Braswell as "Magistrate Braswell," and worse, "Mag. Braswell." Since 1990, those who hold Judge Dominguez Braswell's current (and this Court's former) position across the country have been known as "United States Magistrate *Judges.*" *Judicial Improvements Act of 1990*, codified in part at 28 U.S.C. § 631 (emphasis added). That means the title of "Magistrate Judge" has been in use for 35 years. Omission of the word "Judge" from her official title may reflect mere carelessness, but it is nevertheless inappropriate. The further truncation of "Magistrate" to "Mag." is similarly unfitting. "Magistrate Judge" or "Judge" should be used.

Court accepts the Recommendation and incorporates it into this Order by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

## A. STANDARD OF REVIEW

Under Fed. R. Civ. P. 72(b)(3), this Court reviews de novo any part of a magistrate judge's recommendation that is properly objected to. An objection is proper only if it is sufficiently specific "to focus the district court's attention on the factual and legal issues that are truly in dispute." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). "In the absence of a timely objection, the district court may review a [magistrate judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).

## B. BACKGROUND

As set forth more fully in the Recommendation, this is an action against Defendant United States of America under the Federal Tort Claims Act (FTCA) for professional negligence concerning medical care provided to Plaintiff at Evans Army Community Hospital in Fort Carson, Colorado ("Army Hospital"). While stationed at Fort Carson as a military-dependent spouse, Plaintiff began experiencing tingling and numbness in her legs and left side of her body, as well as fatigue, dizziness, speech impairment, balance issues, migraines, and visual blurring. At the onset of these symptoms in 2013, she sought treatment over the course of four years at the Army Hospital, but her symptoms continued to worsen. Plaintiff alleges that during her care, her military medical providers failed to provide adequate care or an accurate

diagnosis and instead prescribed medication to treat symptoms unrelated to her true (and later discovered) health condition, Multiple Sclerosis (MS).

Plaintiff's military health care benefits ended in 2017 with her divorce from her military spouse. At this point, Plaintiff alleges she had only been diagnosed with migraines and anxiety. However, this changed in 2018, when she developed double vision while driving home from work. Plaintiff immediately sought treatment through her civilian medical providers, who diagnosed her with advanced MS in June 2018.

In this action, Plaintiff alleges her previous military medical providers negligently provided her the level of care that a reasonably prudent health care professional practicing in the same capacity would have provided in the same or similar circumstances. She claims these medical providers' negligence in their misdiagnoses or failure to properly diagnose Plaintiff in a timely manner was the direct and proximate cause of her resulting injuries, damages, and losses.

### C. THE RECOMMENDATION & OBJECTION

Defendant's partial objection is limited. In its objection, Defendant agrees Judge Dominguez Braswell "correctly determined that Colorado's three-year statute of repose [Colo. Rev. Stat. § 13-80-102.5(1)] applies in this action, because the FTCA incorporates, rather than preempts, state substantive law[,]" and she "was also correct in concluding that the statute of repose extinguished Plaintiff's claim because the relevant acts or omissions in this case occurred nearly eight years before Plaintiff

3

filed her complaint." Dkt. 36, p.1. Defendant objects and argues, however, that Judge Dominguez Braswell "erred in ruling that two statutory exceptions rescue Plaintiff's claim from extinction." *Id.*

In this regard, Judge Dominguez Braswell noted the three-year repose period under Colorado law is subject to several exceptions, including the concealment exception and the impossible-to-discover exception. Colo. Rev. Stat. § 13-80-102.5(3). After determining the statute of repose applies and is not preempted by the FTCA, Judge Dominguez Braswell analyzed these two exceptions and found both apply to save Plaintiff's claim.

Plaintiff alleges the statute of repose began to run on August 5, 2014—the date of her last visit with Dr. Langford at the Army Hospital—causing the repose period to have expired on August 5, 2017. Plaintiff also asserts that because she did not discover—and in the exercise of reasonable diligence, could not have discovered—her injury and its cause until May 23, 2018 (the date she began developing double-vision), the exception applies.

Defendant contends the repose period began on December 31, 2015—the date of Plaintiff's final visit to the Army Hospital—so the repose period expired on December 31, 2018. According to Defendant, because Plaintiff knew about her injury within the repose period (by June 1, 2018—the date an MRI highly suggested MS), the impossible-to-discover exception is inapplicable.

Considering these arguments, Judge Dominguez Braswell determined the essence of Defendant's contention was a continuing-course-of-treatment argument, arguing that because the Complaint indicates Plaintiff received care from Army Hospital medical personnel into December 2015, her claim must consider the acts or omissions of all her Army medical providers. In evaluating whether the impossible-to-discover exception applied, Judge Dominguez Braswell first examined the start of the repose period, which hinged on what constitutes "treatment" from among the various medical services Plaintiff received from Army Hospital personnel. Judge Dominguez Braswell found the subsequent treatment Plaintiff received from providers *after* Dr. Langford's August 5, 2014 treatment was for Plaintiff's primary diagnosis of eczema and chronic left knee pain. She added:

> To be fair, according to the Complaint, notes from these visits list Plaintiff's "Neurological conditions, Persistent Migraine Aura, Anxiety, Tingling (paresthesia), [and] Numbness of Both Legs[.]" (*Id.* at ¶ 37.) But merely noting Plaintiff's history does not support that Plaintiff was actually treated for neurological symptoms. Therefore, the Court concludes the later treatments do not constitute a continuation of treatment for Plaintiff's neurological conditions, and the "final act constituting the treatment" was on August 5, 2014, when Plaintiff last saw Dr. Langford for her neurological conditions.

Dkt. 33, p.11.

Judge Dominguez Braswell further rejected Defendant's argument that Plaintiff should have known about her injury and its cause, during the applicable period, through the exercise of reasonable diligence, finding that argument involved disputed issues of fact not appropriate for resolution at this stage.

5

## D. ANALYSIS

Reviewing the Recommendation's application of the impossible-to-discover exception *de novo*, the Court overrules Defendant's objection. First, the Court agrees with Judge Dominguez Braswell's interpretation of the term "treatment," when considering an ongoing course of treatment, as limited to treatment Plaintiff received specific to her illness or condition. *See Comstock v. Collier*, 737 P.2d 845, 848, 849 (Colo. 1987) ("[I]n the case of a continuous course of treatment *for a particular condition*, we conclude that the three-year statute of repose does not begin running until the final act constituting the treatment."), ("[R]egardless of the date of discovery, an action is barred three years after termination of treatment *for a particular condition*.") (emphases added); *Lane v. Lane*, 752 S.W.2d 25, 26, 27 (Ark. 1988) (citing sources defining "continuous treatment" as treatment "for the particular disease or condition involved" or "for the same or related condition"); *Samuelson v. Freeman*, 454 P.2d 406, 410 (Wash. 1969) ("[I]f malpractice is claimed during a continuous and substantially uninterrupted course of treatment for a particular illness or condition, the statute does not begin to run until the treatment *for that particular illness or condition has been terminated*.") (emphasis added); *Borgia v. City of New York*, 187 N.E.2d 777, 779 (N.Y. 1962), *aff'd*, 204 N.E.2d 207 (N.Y. 1964) ("The 'continuous treatment' we mean is treatment for the same or related illnesses or injuries, continuing after the alleged acts of malpractice, not mere continuity of a general physician-patient relationship.").

The Complaint alleges Plaintiff presented at the Army Hospital on June 17, 2014, and was seen by Dr. Langford "for episodic neurologic symptoms with headache, vision changes, numbness, tingling, left arm tremors, disequilibrium, slurred speech, and blurred vision." Dkt. 1, ¶30. At that time, he diagnosed her with "probable migrainous auras" and possible anxiety, prescribed her Topamax,[2] and reviewed digital images of her MRI which showed "normal" results. *Id.* at ¶31. Plaintiff saw Dr. Langford again for the final time on August 5, 2014. *Id.* at ¶36. At that time, Dr. Langford found Plaintiff's reported symptoms supported his diagnosis of migraines as the cause "of these spells, rather than simple partial seizures[,]" and he documented her other various subjective symptoms. *Id.* He also noted that Plaintiff responded well to the low dose of Topamax and reported that her June 2014 MRI and June 17, 2014 labs were normal. *Id.*

Thereafter, on October 23, 2014, Plaintiff presented at Army Hospital's Allergy/Immunology Department for her primary diagnosis of Dyshidrotic Eczema. *Id.* at ¶37. In 2014 and 2015, various medical treatment providers from Army Hospital treated Plaintiff for extreme eczema on her hands and chronic left knee pain; no medical provider employed by Defendant followed up on certain radiology notes from the 2014 MRI. *Id.* at ¶38. The Complaint alleges, "until her divorce, the Army Medical Providers had failed to provide any affirming diagnosis or diagnoses of her

---

[2] Topamax is primarily used to treat seizures and prevent migraine headaches. *See https://www.drugs.com/topamax.html.*

7

unexplained, troubling, and life-limiting symptoms she had lived with since 2013. With the only misdiagnosis of unexplained 'migraines' provided by the Army Medical Providers, Plaintiff had to learn to live with her dizziness, headache, vision changes, left side numbness, tingling, left arm tremors, disequilibrium, slurred speech, and blurred vision, and weakness." *Id.* at ¶40.

The Court finds these allegations in the Complaint plausibly allege Plaintiff's course of treatment related to her condition of MS ended with her last visit with Dr. Langford on August 5, 2014. There is no allegation in the Complaint to suggest that the treatment she received thereafter for eczema and knee pain was somehow related to her prior course of treatment for her yet undiagnosed MS. And it is of no moment that Plaintiff received subsequent care in the form of prescribed migraine pain medication, as Defendant argues. The Court agrees with Judge Dominguez Braswell that ongoing prescription medication alone does not constitute continuing treatment. *See, e.g., Isabella v. Eid*, No. 09-cv-5903-NRB, 2011 WL 2421291, at *5 (S.D.N.Y. June 7, 2011) (citing cases concerning an isolated prescription medication or outstanding prescription, without more, does not constitute continuous treatment). Nor does the mere listing of Plaintiff's medical history in medical treatment notes, without more, constitute ongoing treatment as Judge Dominguez Braswell found. Dkt. 33, p.11.

The Court further agrees with Judge Dominguez Braswell's conclusion that whether and when Plaintiff knew (or should have known through reasonable diligence) of her injury and its alleged cause requires further factual development. At

8

this motion-to-dismiss stage, the Court finds the Complaint plausibly alleges Plaintiff's lack of knowledge. Dkt. 1, ¶40.

Plaintiff did not receive a diagnosis of MS until June 1, 2018, when she saw civilian medical personnel. Dkt. 1, ¶¶46-49. She filed her FTCA Notice of Claim on May 8, 2020. *Id.* at ¶9. She received no response to her Notice and filed this action on February 27, 2023. Dkt. 38, p.6 (arguing Plaintiff "timely brought her claim against Defendant within two years of learning of Defendant's misdiagnosis on June 1, 2018 (filed FTCA Notice of Claim on May 8, 2020) pursuant to the Impossible to Discover exception to Colorado's statute of repose."). Application of the impossible-to-discover exception to the repose period, therefore, makes her claim timely.

\*     \*     \*

For the reasons shared above, the Court OVERRULES Defendant's partial objection, ACCEPTS and ADOPTS the Recommendation (Dkt. 33) and DENIES the Motion to Dismiss (Dkt. 13).[3] It is FURTHER ORDERED that the discovery stay is hereby LIFTED. The parties are ORDERED to promptly contact the Chambers of Judge Dominguez Braswell to set this matter for time before her to determine the next steps in litigating this case.

DATED: March 27, 2025

---

[3] Because the Court finds the one exception applies, it need not consider the other. Defendant's objection concerning the concealment exception is OVERRULED as MOOT.

9

BY THE COURT:

_____
S. Kato Crews
United States District Judge